UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BEVERLY L. ROBINSON,

                                  Plaintiff,

                                                    Case # 15-CV-6513-FPG

v.

                                                    DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                                  Defendant.
_____

       Beverly L. Robinson ("Robinson" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13, 14. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

       On August 1, 2011, Robinson protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 10. She alleged that she had been disabled since April 15, 2011, due to lower back pain, hip replacements, knee arthritis, loss of peripheral vision in the left eye, cataracts, numbness and tingling in the right hand and arm, and spinal disc damage. Tr. 186. After her application was denied at the initial administrative level, a hearing was held

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2]     References to "Tr." are to the administrative record in this matter.

before Administrative Law Judge Michael W. Devlin ("the ALJ") on November 21, 2013, in which the ALJ considered Robinson's application *de novo*. Tr. 539-78. Robinson appeared at the hearing with her attorney and testified. *Id.* Julie A. Andrews, a vocational expert ("VE"), also appeared and testified. Tr. 566-77. On May 16, 2014, the ALJ issued a decision finding that Robinson was not disabled within the meaning of the Act. Tr. 10-18. On June 26, 2015, that decision became the Commissioner's final decision when the Appeals Council denied Robinson's request for review. Tr. 1-6. Thereafter, Robinson filed this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must

present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ's decision analyzed Robinson's claim for benefits under the process described above. At step one, the ALJ found that Robinson had not engaged in substantial gainful activity since the alleged onset date. Tr. 12. At step two, the ALJ found that Robinson has the following severe impairments: low back, neck, and knee impairments with pain, status post bilateral hip replacements and right knee surgery, and asthma. Tr. 12-13. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 13.

Next, the ALJ determined that Robinson retained the RFC to perform sedentary work[3] with additional limitations. Tr. 13-17. Specifically, the ALJ found that Robinson can occasionally push and pull 10 pounds, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants, and hazards like machinery, heights, and extreme cold, heat, and humidity. Tr. 13.

---

[3]   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

At step four, the ALJ found that this RFC allows Robinson to perform her past relevant work as a tax preparer and dispatcher clerk. Tr. 17-18. Accordingly, the ALJ concluded that Robinson was not "disabled" under the Act. Tr. 18.

## II. Analysis

Robinson argues that remand is required because (1) the ALJ erred at step two when he failed to find that her shoulder and wrist conditions were severe impairments and further erred when he failed to account for those impairments in the RFC assessment; (2) the ALJ made an improper credibility assessment; and (3) the step four determination is not supported by substantial evidence because the ALJ posed an incomplete hypothetical question to the VE. ECF No. 13, at 11-21. These arguments are addressed in turn below.

### A. Step Two and RFC Assessment

Robinson argues that the ALJ erred at step two when he failed to analyze her alleged shoulder and wrist impairments and that he also erred by not incorporating any shoulder or wrist limitations into the RFC assessment. ECF No. 13, at 11-18.

At step two of the disability analysis, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521. "Basic work activities" are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). It is the claimant's burden to present evidence that establishes the severity of his or her impairment. 20 C.F.R. § 404.1512(c). The claimant must demonstrate "that the impairment has caused functional limitations that precluded him [or her] from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y.

2012) (citing *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010) and *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. *Perez*, 907 F. Supp. 2d at 271; S.S.R. 85-28, 1985 WL 56858, at *3 (S.S.A. Jan. 1, 1985). The SSA's regulations require the ALJ to consider nonsevere impairments when assessing the claimant's RFC. *See* 20 C.F.R. § 404.1545(a)(2).

Here, the ALJ did not discuss Robinson's alleged shoulder or wrist impairments at step two of the disability analysis, but he found that she had other severe impairments and thus continued on to the subsequent steps. Tr. 12-13. The ALJ did, however, consider Robinson's alleged shoulder and wrist impairments in determining her RFC and thus the failure to consider them at step two was harmless error. *See Vaughn v. Colvin*, 116 F. Supp. 3d 97, 103 (N.D.N.Y. 2015) ("[B]ecause the [ALJ] considered [Plaintiff]'s cerebral palsy in determining his RFC . . . the failure to deem the cerebral palsy severe at step two was harmless."). Accordingly, this Court will continue its analysis and examine whether the RFC assessment is supported by substantial evidence.

### 1. Shoulder Impairment

Robinson offers few arguments and the record contains very little evidence of any shoulder impairment. It appears that in August of 2010, before her alleged disability onset date, Robinson complained of left arm and shoulder pain and received a steroid injection. Tr. 372-73. On May 29, 2012, consultative examiner Elizama Montalvo, M.D. ("Dr. Montalvo") noted that Robinson's shoulder had a reduced range of motion, but she did not diagnose Robinson with any particular shoulder condition or opine that her shoulder limited her ability to work. Tr. 410-11.

Similarly, on November 13, 2012, state agency medical consultant Shital Patel, M.D. ("Dr. Patel") completed a physical RFC assessment and did not include any shoulder limitations. Tr. 413-18. The ALJ discussed and properly relied on both of these opinions in creating the RFC determination. Tr. 15-17; *Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.") (citations omitted).

The ALJ also noted that on September 13, 2013, Robinson had "decreased ranges of motion in her shoulders and cervical spine with reduced strength and grip strength in the right upper extremity." Tr. 16 (citing Tr. 435). This treatment note reveals that Robinson complained of numbness and tingling in the right arm and was prescribed naproxen. Tr. 435-36. Robinson did not allege shoulder problems during the disability application process, and at her hearing she merely indicated that she can feel shoulder pain "from time to time" and that "[i]t's just more uncomfortable than anything." Tr. 49.

Although the evidence discussed above demonstrates that Robinson has some shoulder issues, there is no evidence that those issues significantly limit her physical ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1521.

### 2. Wrist Impairment

The record indicates that in early 2012 Robinson fell and fractured her right wrist. Tr. 531. The ALJ noted in the RFC analysis that Robinson went to the hospital on June 12, 2012 with right wrist pain, but that there were "no functional limitations tied to this condition." Tr. 16 (citing Tr. 421-23). He also explained that Robinson saw Jeffrey Jones, M.D. ("Dr. Jones") regarding her wrist fracture on July 17, 2012, and that Dr. Jones noted that "she was doing well

except for some numbness and tingling." Tr. 16 (citing Tr. 533). On September 10, 2012, Robinson participated in a nerve conduction study that revealed that she had "normal motor and sensory functioning" in her right wrist. Tr. 16 (citing Tr. 520). At other appointments with Dr. Jones in late 2012, Robinson indicated that she "had been experiencing much less pain and had had an improvement in the numbness, tingling, and aching" in her wrist, and she "quantified her improvement as at least 50%." Tr. 16 (citing Tr. 514, 518).

The ALJ also noted that on February 6, 2013, Robinson "stated that she was having ongoing pain in her right wrist but conceded that she was working up to 12 hours per day and engaging in typing and writing, which Dr. Jones noted would be expected to exacerbate her symptoms as described." Tr. 16 (citing Tr. 510). A review of this treatment note reveals, however, that Dr. Jones did not opine that Robinson could not work or that her wrist condition functionally limited her ability to work. Tr. 510. He simply indicated that treatment would not effectively reduce her pain while she was typing and writing for 12 hours per day, and he opined that "she should simply get through this period as best she can with the splinting and acceptance of symptoms[.]" *Id.*

The ALJ also pointed out that Robinson stated at later appointments that "her wrist overall feels much better," and that a nurse practitioner indicated that Robinson "was in no apparent distress, had no swelling or deformity, was able to fully flex and extend her fingers and wrist, and admitted to no pain at the first dorsal compartment or the radial snuffbox." Tr. 16 (citing Tr. 506, 508). The last treatment note regarding Robinson's wrist reported that she "has been well in the recent timeframe," "state[d] the symptoms in her right wrist have resolved," and "is not currently having any pain" or "needing to wear the splint." Tr. 506. Significantly, the

plan on this treatment note states that "there is no indication for further followup as the symptoms in her right wrist and thumb are currently stable." *Id.*

The ALJ also properly relied on Dr. Montalvo and Dr. Patel's medical opinions when he created the RFC assessment without any wrist limitations. Tr. 15-17; *Barber*, 2016 WL 4411337, at *7. Dr. Montalvo noted that Robinson complained of pain and numbness in her wrist, but she did not diagnose any wrist conditions and did not opine that Robinson had any functional limitations related to her wrist. Tr. 408, 410-11. Similarly, Dr. Patel's opinion did not contain any wrist limitations. Tr. 413-18. Although Robinson argues that these medical opinions did not consider her shoulder or wrist impairments and that those impairments worsened after these examinations, the ALJ clearly considered other medical evidence in his RFC analysis that post-dated these opinions. Tr. 16 (citing Tr. 435, 506, 508, 510, 534).

Accordingly, based on the ALJ's discussion of Robinson's alleged shoulder and wrist impairments in the RFC analysis and the medical evidence of record, this Court finds that the ALJ's step two determination and his RFC assessment were supported by substantial evidence and that any conflicts in the medical evidence were within the ALJ's discretion to resolve. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 112 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.") (citation omitted)).

### B. Credibility Assessment

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective

complaints of pain" if the finding is supported by substantial evidence. *Id.* (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements by analyzing the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

Here, the ALJ found Robinson only "partially credible" because (1) she collected unemployment benefits, which meant that she certified that she was "ready, willing, and able to work;" (2) she worked up to 12 hours per day in February of 2013 at a job involving significant typing and writing, despite her allegations of wrist pain; (3) the objective medical evidence did not fully support her allegations; and (4) her daily activities contradicted her alleged limitations. Tr. 17. Robinson argues that the ALJ's credibility assessment is not supported by substantial evidence because the ALJ's consideration of her daily activities "ignor[ed] reports of additional limitations she experienced" and her work activity "did not rise to the level of substantial gainful activity." ECF No. 13, at 18-20.

### i. Daily Activities

The ALJ noted that Robinson's "testimony during the hearing showed that she in fact suffered from some limitations, but she acknowledged that she could still lift up to 10 pounds and perform some activities of daily living despite her impairments." Tr. 17. He relied on treatment notes that indicated that Robinson was "independent in shopping for small items, housekeeping, laundering, bathing, dressing, feeding, and moving around" and that she could "manage her major responsibilities with only minimal difficulty." Tr. 16-17. Although the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities when assessing his or her credibility. 20 C.F.R. § 404.1529(c)(3)(i).

This Court finds that the ALJ properly considered Robinson's daily activities in accordance with the standards articulated above and did not err in finding that such activities weakened her credibility. Moreover, the ALJ did not rely on Robinson's daily activities as the sole reason to find her only partially credible. The ALJ also considered Robinson's receipt of unemployment benefits, her work activity, and the objective medical evidence. Tr. 17.

### ii. Work Activity

The ALJ also noted that in February of 2013 Robinson "was working up to 12 hours per day at a job involving significant typing and writing, noteworthy duties considering the allegations of pain in her wrist, and yet [she] was engaged in significant work activity at this time." Tr. 17. Although Robinson points out that this work activity did not constitute substantial gainful activity and that the record reveals that this work activity exacerbated her wrist pain (ECF No. 13, at 20 (citing Tr. 12, 160, 510)), this Court finds that the ALJ did not err when he found that this work activity weakened her credibility. The ALJ has discretion to evaluate a

claimant's credibility and is entitled to rely on "other" factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(vii). Moreover, the ALJ did not rely on Robinson's work activity as the sole reason to find her only partially credible. The ALJ also considered her receipt of unemployment benefits, her daily activities, and the objective medical evidence. Tr. 17.

Accordingly, for the reasons stated, this Court finds that the ALJ did not err and that the credibility assessment is supported by substantial evidence.

### C. Step Four

Finally, Robinson argues that the ALJ's step four determination that she could perform her past relevant work is not supported by substantial evidence because he relied on VE testimony elicited in response to an incomplete hypothetical question. ECF No. 13, at 21. Specifically, Robinson asserts that "the ALJ and [her] representative posed alternate hypothetical questions to the VE that included degrees of limitations in reaching and handling, but none of these limitations were accepted into the RFC or the hypothetical the ALJ actually relied on." *Id.*

At step four, the ALJ determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. One way an ALJ may make this determination is though VE testimony. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his [or her] opinion and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (quotation marks and citations omitted).

As explained above, this Court finds that the RFC determination was supported by substantial evidence and did not need to include additional shoulder and wrist limitations. After reviewing the transcript of Robinson's hearing, this Court also finds that the hypothetical questions posed to the VE adequately reflected the RFC determination and that the ALJ was entitled to rely on the VE's responses. Tr. 62-67. Accordingly, this Court finds that the ALJ's step four analysis was supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF Nos. 12, 13) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 27, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court